SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X
KIMBERLEY A. CARPENTER, ARTHUR ACKERT, JR.,
ARTHUR ACKERT, SR., DENNIS LORE,                          Index No.: 07- 08931
AND SUPERIOR WALLS OF THE HUDSON VALLEY,
INC.,

                                    Plaintiffs,

                    -against-

MARIE PUPKE and EIFFEL INVESTMENT
GROUP AND ASSOCIATES, LLC.,

                                    Defendants.

-----------------------------------------------------------------------X

The annexed document(s) is/are hereby certified pursuant to NYCRR §130-1.1-a:

[X]   Complaint                              [ ]   Motion
[ ]   Demand for Bill of Particulars         [ ]   Supporting Papers to Motion
[ ]   Notice of EBT                          [ ]   Memorandum of Law
[ ]   Notice for Discovery and Inspection    [ ]   Affirmation in Opposition
[ ]   Response to Demand                      [ ]   Reply Affirmation
[ ]   Demand for Authorization               [ ]   Notice to Admit
[ ]   Stipulation                            [ ]   Response to Notice
[ ]   Answer, Demand for Bill of             [ ]   Other _____
      Particulars and Multiple Discovery
      Demands

                              Yours, etc.,

                              LAW OFFICES OF VINCENT E. BAUER

                              BY: _____
                                  VINCENT E. BAUER, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------------X
KIMBERLEY A. CARPENTER, ARTHUR ACKERT, JR.,
ARTHUR ACKERT, SR., DENNIS LORE,
AND SUPERIOR WALLS OF THE HUDSON VALLEY,

                                    Plaintiffs,

                        -against-

MARIE PUPKE and EIFFEL INVESTMENT
GROUP AND ASSOCIATES, LLC.,

                                Defendants.
--------------------------------------------------------------------X

Index No.:

Plaintiff designates Westchester
County as the place for trial

**SUMMONS**

Plaintiff's principal place of
business and residence is in
Westchester County

5/14/07

TO THE ABOVE NAMED DEFENDANTS

      YOU ARE HEREBY SUMMONED and required to serve upon the plaintiff's attorney, an

answer to the annexed complaint, which is herewith served upon you with all relevant pleadings in

the action, within twenty (20) days after the service thereof, exclusive of the day of service, or

within thirty (30) days after service is complete if service is made by any method other than

personal delivery to you within the State of New York.

      In case of your failure to answer, judgment will be taken against you by default for the relief

demanded in the complaint.

Dated: New York, New York
       May 9, 2007

                                Yours etc.

                            By                                        
                              VINCENT E. BAUER
                              Law Offices of Vincent E. Bauer
                              Attorney for Plaintiffs
                              475 Park Avenue South, 25th Floor
                              New York, NY 10016
                              Ph: (212) 575-1517
                              Fax: (212) 689-2726

MARIE PUPKE
8366 Sawpine Road
Delray, Florida

EIFFEL INVESTMENT GROUP
AND ASSOCIATES, LLC.
8366 Sawpine Road
Delray, Florida

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------------x
KIMBERLEY A. CARPENTER, ARTHUR ACKERT, JR.,
ARTHUR ACKERT, SR., DENNIS LORE,                    Index No.:
AND SUPERIOR WALLS OF THE HUDSON VALLEY,
INC.,

                                        Plaintiffs,

        -against-                                   COMPLAINT


MARIE PUPKE and EIFFEL
INVESTMENT GROUP AND ASSOCIATES, LLC.,


                                        Defendants.
------------------------------------------------------------------------x


        Plaintiffs, by and through their attorneys, The Law Offices of Vincent E. Bauer,

as and for their Complaint, allege as follows:

1.        This is an action brought by Plaintiffs against Defendants to redress the broad-

based, malicious dissemination of libelous statements by Defendant Marie Pupke, acting

within the scope of her role as an officer of Defendant Eiffel Investment Group and

Associates, LLC, concerning Plaintiffs.


                    **PARTIES, JURISDICTION AND VENUE**


2.        At all relevant times, plaintiff Kimberley A. Carpenter ("Ms. Carpenter") has

resided and still resides at 15 Mereland Rd, New Rochelle, New York.

3.        At all relevant times, plaintiff Arthur Ackert Sr. ("Ackert Sr.") has resided and

still resides at 111 Balsam Drive, Poughkeepsie, New York.

4.        At all relevant times, plaintiff Arthur Ackert Jr. ("Ackert Jr.") has resided and

still resides at 13 Kimlin Court, Poughkeepsie, New York.


                                        1

5.      At all relevant times, plaintiff Dennis Lore ("Lore") resided and still resided at 136 Moonlight Drive, Stormville, New York.

6.      At all relevant times, the principal place of business of plaintiff Superior Walls of the Hudson Valley ("SWHV") was and still remains 68 Violet Avenue, Poughkeepsie, New York.

7.      Upon information and belief, defendant Marie Pupke ("Ms. Pupke") resided and still resides at 8266 Sawpine Road, Delray Beach, Florida.

8.      Upon information and belief, the principal place of business of defendant Eiffel Investment Group and Associates LLC ("Eiffel") was and still remains 8266 Sawpine Road, Delray Beach, Florida.

9.      The jurisdiction of this Court is predicated upon New York Civil Practice Law and Rules Sections 301 and 302 (a)(1). Venue is properly laid in Westchester County, which is the county in which Plaintiff Kimberly Carpenter resides.


## FACTUAL BACKGROUND


10.     In or about September 2006, AACK Land Development, LLC, Fairview Block and Supply Corp., and Horizon Development, LLC, respectively, entered into three separate agreements with Eiffel whereby those entities assigned to Eiffel real estate contracts to which they were parties.

11.     Ackert Jr., Ackert Sr., and Lore are partners in the real estate transactions involving AACK, Fairview, and Horizon.

2

12.     SWHV, a company owned by Ackert Sr., was not and is not involved in these real estate transactions.

13.     In accordance with the terms and conditions of the assignment agreements, Eiffel deposited into the escrow account of Ms. Carpenter specified sums of money to be disbursed to Ms. Carpenter's clients upon receipt of certain documentation in accordance with paragraph two of the respective assignment agreements.

14.     In September 2006, Ms. Carpenter sent letters to Eiffel in accordance with paragraph two of the assignment agreements. Those letters stated that the down payments on the underlying agreements which were the subject of the assignments were being held in escrow; certified that her clients were in good standing with respect to the underlying contacts; and certified that the underlying contracts were in full force and effect. That correspondence also advised that Ms. Carpenter's clients were in good standing with the Secretary of State.

15.     Since each of those contractual conditions to the release of the monies held in escrow had been satisfied, in accordance with paragraph two of the assignments, the funds were thereafter disbursed by Ms. Carpenter to her respective clients.

16.     The Fairview to Eiffel assignment involved a certain Lauren Tice Road, Saugerties, New York property. A second payment to be made to Fairview was, in accordance with paragraph three of the assignment agreement, contingent upon Eiffel's receipt of the "Sketch Approval" of that property which was to be given by the planning board of the Town of Saugerties.

17.     On November 21, 2006, the Town of Saugerties planning board granted Sketch Approval.

3

18.     On November 22, 2006, Ackert Jr. advised Ms. Pupke of the Sketch Approval, requesting the deposit of $50,000 in accordance with paragraph three of the assignment.

19.     On February 2, 2007, Eiffel wired $50,000 into Carpenter's escrow account. According to the assignment agreement, that $50,000 payment was to be disbursed to Fairview on the "receipt of sketch approval....." As previously stated, said approval was received on November 21, 2006.

20.     On February 26, 2007, Ms. Carpenter emailed Ms. Pupke, forwarding her a copy of the November 21, 2006 minutes, as Ackert Jr. had done previously, and advising her that, in accordance with the terms and conditions of the assignment agreement, Ms. Carpenter was disbursing the funds to Fairview.

21.     On April 27, 2007, Ms. Carpenter received an email and several faxes from Eiffel demanding to know the status of the $50,000 deposit which, as Ms. Carpenter had previously informed Ms. Pupke, had been disbursed.

22.     The April 27, 2007 email advised that, if Ms. Carpenter did not address the issue of the $50,000 escrow deposit, Ms. Pupke would report her to the "New York Bar."

23.     On April 30, 2007, Ms. Carpenter sent Ms. Pupke a letter detailing the history concerning the escrow funds.

24.     On Tuesday, May 1, 2007, via email and fax, Ms. Pupke advised Lore, Ackert Jr., SWHV and Ms. Carpenter that Eiffel was canceling the assignment agreements on two of the properties, and demanded a return by May 4 of all monies paid under those assignment agreements, including reimbursement of certain costs.

25.     In her May 1 letter, Ms. Pupke also threatened to file a formal complaint against Ms. Carpenter with the New York State Bar Association, and made other threats against

Lore. Ackert Jr. and Ackert Sr., unless the monies were returned. Indeed, on May 3, 2007, Ms. Carpenter received from Ms. Pupke a completed New York State Grievance Committee grievance form.

26.     The purported May 1, 2007 cancellation of the assignment agreements was ineffective, as Eiffel was only contractually entitled to cancel the assignment agreements and obtain a return of the monies paid by it in the event that preliminary approval was denied by the relevant town planning boards, which denial has not occurred.

27.     Ms. Pupke and Eiffel have since been advised that they have breached the terms of the assignment agreements, that the assignments have been declared null and void, and that all monies paid shall be treated as liquidated damages.

28.     On May 4, 2007, beginning at 6:16 p.m. and continuing until after midnight, Ms. Carpenter received emails from Ms. Pupke, as broker/president of acquisitions & public relations of Eiffel. Those emails stated that Ms. Carpenter, along with her clients, were professional crooks, thieves and liars, and that Ms. Pupke, personally, was going to "expose [Ms. Carpenter] to every law firm in the State of New York."

29.     Also on May 4, 2007, Ms. Carpenter received 14 emails from Ms. Pupke. Attached to each email was a letter entitled: "Be Aware of Kimberley A. Carpenter, Esq." It was addressed to "all lawyers, real estate firms and builders" in Westchester, Dutchess, Ulster and Columbia counties.

30.     The May 4, 2007 correspondence stated:

> Re: Kimberley A. Carpenter, Esq.
> New York License #2312569 and Connecticut License #400440
> 15 Mereland Road, New Rochelle, NY 10804
> PH: 914-654-8792

I thought you should be aware that Kimberley A. Carpenter is the most unethical, unscrupulous, deceitful lawyer in Westchester County. She is not to be trusted with money. Kimberley A. Carpenter has intentionally participated and represented the interests of her father, Arthur Ackert, Sr., her brother, Arthur Ackert, Jr., the owners of Superior Walls of the Hudson Valley located at 68 Violet Avenue, Poughkeepsie, NY 1112601 and her friend, Dennis Lore, in a fraudulent, crooked and unethical real estate transaction to our company. When Kimberley A. Carpenter and her family assigned three real estate transactions that she represented to be valid and in good standing to our company, we trusted her thoroughly.

After an agreement had been reached between her, her family and my company, we entrusted $380,000 into Kimberley's trust account to be held in escrow until certain terms were met in the contracts.

We were recently made aware that Kimberly A. Carpenter disbursed the $380,000 without obtaining proper authorization from my company to her brother, Arthur Ackert, Jr., her father, Arthur Ackert, Sr., and her friend, Dennis Lore. In addition to these funds, Kimberley's brother, Arthur Ackert, Jr., tried to embezzle an additional $100,000 from my company by falsifying information. That turned out to be untrue.

Today I learned that Kimberley Carpenter is conspiring to steal the $380,000 for her father, Arthur Ackert, Sr., her brother, Arthur Ackert, Jr., and her dear friend, Dennis Lore.

Even though the sellers including their lawyers in these transactions have agreed that these contracts should be immediately terminated due to misrepresentation from Kimberley A. Carpenter and her family to us.

Kimberly A. Carpenter has intentionally withheld information and kept all crucial documents provided to her by the sellers from us for months for fear of being found out. We have finally got the true story about Kimberly A. Carpenter and her father, Arthur Carpenter Sr., brother, Arthur Carpenter Jr., and dear friend, Dennis Lore from the other parties involved in this transaction.

Kimberly A. Carpenter and her family purposely misrepresented these transactions to us. These projects turned out to simply be the latest scam of the Carpenter/Ackert family. In a desperate act to cover up [sic]

Kimberly's brother, Arthur A. Ackert, and Dennis Lore have gone as far as disturbing wetlands on one of the properties by digging deep hole tests, grading and clearing vegetation within the wetland area which might be considered illegal if not criminal according to the Army Corps of Engineers' guidelines.

Even though we have filed a formal complaint against Kimberly A. Carpenter with the State of New York Grievance Committee and the State of Connecticut Grievance Committee, we thought you should know the type of unscrupulous, unethical, fraudulent sorry excuse of a human being Kimberley A. Carpenter truly is in case her name comes across your desk.

If you want to have more details on these transactions, please call me at the number listed below and I will be more than happy to fill you in.

31.    On May 5, 2007, the same letter was sent an additional twenty times to Ms. Carpenter's home with twenty corresponding attempts to fax the letter to her phone instead of fax line.

32.    Also on May 5, 2007, Ms. Pupke sent yet another letter advising that Ms. Carpenter and her clients had 72 hours to refund not $236,220, but $380,000 with $38,000 interest, and threatening legal action if that demand was not met.

33.    On the morning of May 7, 2007, the law firm of Callahan & Malone located in Mineola, New York contacted Ms. Carpenter to advise her that it had received over forty five pages of faxes from Ms. Pupke, containing copies of the above-referenced letters. Ms. Carpenter was formally associated with Callahan & Malone. That firm is in no way involved in the subject real estate transactions.

34.    Also on May 7, 2007, Ms. Carpenter received a phone call from a broker with Century 21 in Poughkeepsie, New York.   The broker, Ms. Priscilla Alden Johnson,

advised her that she had received copies via fax of the "Be aware of Kimberley A. Carpenter, Esq." correspondence.

35.     Thomas Lynch, a real estate broker with Win Morrison Realty, also received the same fax.

36.     Kathy Mondello, of Mondello Realty, Redhook, New York also received the same fax.

37.     A woman named Nancy, an agent with John J. Lease, Highland, New York also received the same fax.

38.     Grist Mill, a real estate firm in Saugerties, New York also received the same fax.

39.     The law firm of Maynard, O'Connor, Smith, & Catalinotto, LLP also received the same fax.

40.     The law firm of Koweek, Cranna, & McEvoy, P.C. also received a copy of the same fax.

41.     Upon information and belief, Ms. Pupke, acting on behalf of Eiffel, has disseminated and/or intends to disseminate the above-referenced letter to "all lawyers, real estate firms and builders" in Westchester, Dutchess, Ulster and Columbia counties.


## FIRST CAUSE OF ACTION
## LIBEL

42.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

43.     The above-described statements made by Defendant Pupke were knowingly false when made. Said statements were made by Ms. Pupke in her capacity as an officer of the Defendant Eiffel, on behalf of Eiffel.

44.     Because these statements include allegations of criminal conduct and relate to the plaintiff's professions, the statements constitute libel per se.

45.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damage to their respective reputations.

46.     By reason of the foregoing, Plaintiffs are entitled to recover damages from Defendants in an amount to be determined at trial, but not less than Twenty Million Dollars ($20,000,000).

        WHEREFORE, Plaintiffs demand judgment:

1.     For economic, compensatory, and punitive damages in an amount to be determined at trial; and

2.     For such other and further relief as the Court deems proper, together with the costs and disbursements of this action.


Dated:     May 9, 2007
           New York, NY


                                        Vincent E. Bauer
                                        Law Offices of Vincent E. Bauer
                                        475 Park Avenue South, 25th Floor
                                        New York, NY 10016
                                        Ph: (212) 575-1517
                                        Fax: (212) 689-2726

                                        Attorneys for Plaintiffs