UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

KIMBERLEY A. CARPENTER, ARTHUR ACKERT, JR., ARTHUR ACKERT, SR., DENNIS LORE, and SUPERIOR WALLS OF THE HUDSON VALLEY, INC.,

Plaintiffs,

- against -

MARIE PUPKE and EIFFEL INVESTMENT GROUP AND ASSOCIATES, LLC.,

Defendants.

Civil Action No. 07-civ-5689 (UA/LMS)

---------------------------------------------------------------X

EIFFEL INVESTMENT GROUP AND ASSOCIATES, LLC.,

Counterclaim-Plaintiff,

- against -

KIMBERLEY A. CARPENTER, ARTHUR ACKERT, JR., DENNIS LORE, SUPERIOR WALLS OF THE HUDSON VALLEY, INC.,AACK LAND DEVELOPMENT, LLC., FAIRVIEW BLOCK AND SUPPLY CORP., and HORIZON REAL PROPERTY DEVELPOMENT, LLC.,

Counterclaim-Defendants.

---------------------------------------------------------------X

**ANSWER AND COUNTERCLAIMS**

Defendants Marie Pupke and Eiffel Investment Group and Associates LLC, by its attorneys, Lazer, Aptheker, Rosella & Yedid, P.C., as and for their answer to plaintiffs' complaint, allege as follows:

1. Deny.

2. Deny knowledge or information sufficient to form a belief.

3. Deny knowledge or information sufficient to form a belief.

4. Deny knowledge or information sufficient to form a belief.

5. Deny knowledge or information sufficient to form a belief.

6. Deny knowledge or information sufficient to form a belief.

7. Admit.

8. Admit.

9. Deny knowledge or information sufficient to form a belief.

10. Admit, except deny that the agreement entered with AACK Land Development was entered in September of 2006.

11. Deny knowledge or information sufficient to form a belief.

12. Deny knowledge or information sufficient to form a belief.

13. Admit the existence of the assignment agreements and refer the Court to the assignment agreements for interpretation of their true meaning and legal content. Admit that defendants provided monies to plaintiffs to be held in the escrow account of Kimberley Carpenter, Esq.

14. Admit that defendants received a letter, dated September 28, 2006, from Ms. Carpenter and refer the Court to that letter for its true meaning and legal content.

15. Deny knowledge or information sufficient to form a belief as to whether the funds were disbursed.

16. Admit the existence of an assignment agreement with respect to the purchase of property located on Lauren Tice Road, Saugerties, New York, and refers the Court to that assignment agreement for its true meaning and legal content.

17. Deny.

18. Admit that Arthur Ackert Jr. advised Ms. Pupke of the purported Sketch Approval.

19. Admit defendants wired $50,000 to Ms. Carpenter's escrow account based on the representation of Arthur Ackert of the purported Sketch Approval for the Lauren Tice property. Admit the existence of an assignment agreement with respect to the contract to purchase the property located on Lauren Tice Road, Saugerties, New York and refer the Court to the assignment agreement for its true meaning and legal content. Deny that Sketch Approval was received on November 21, 2006.

20. Admit that defendants received an email on February 26, 2007 from Ms. Carpenter and refer the Court to that email for its true meaning and legal content. Deny Ms. Carpenter had the right to disburse any funds.

21. Admit that defendants sent a letter, dated April 27, 2007, via facsimile and by email, inquiring as to the status of its escrow deposit to Carpenter and refer the Court to that letter for its true meaning and legal content.

22. Admit that defendants sent a letter, via email, dated April 27, 2007, to Ms. Carpenter and refer the Court to that letter for true its meaning and legal content.

23. Deny knowledge or information sufficient to form a belief, except admit that Carpenter sent an email to defendants on April 26, 2007 and refer the Court to that email for its true meaning and legal content.

24. Deny, except admit that Ms. Pupke sent a letter, dated April 30, 2007, to Arthur Ackert, Jr., Dennis Lore, and Superior Walls of the Hudson Valley, Inc. cancelling the assignment agreements and refer the Court to that letter for its true meaning and legal content.

25. Admit that Ms. Pupke sent a letter, dated April 30, 2007, to Arthur Ackert Jr., Dennis Lore, and Superior Walls of the Hudson Valley, Inc. and refer the Court to that letter for its true meaning and legal content. Deny knowledge or information sufficient to form a belief as to whether Ms. Carpenter received a completed New York State Grievance Committee form from Ms. Pupke.

26. Deny.

27. Deny.

28. Deny knowledge or information sufficient to form a belief, except admit that a letter, dated May 5, 2007, was sent to Carpenter and refer the Court to the letter for its true meaning and legal content.

29. Deny knowledge or information sufficient to form a belief, except admit that a letter, dated May 5, 2007, was sent to plaintiffs and refer the Court to the letter for its true meaning and legal content.

30. Admit that a letter, dated May 5, 2007, was sent to plaintiffs and refer the Court to the letter for its true meaning and legal content.

31. Deny knowledge or information sufficient to form a belief.

32. Admit that Ms. Pupke sent a letter on May 5, 2007 and refer the Court to that letter for its true meaning and legal content.

33. Deny knowledge or information sufficient to form a belief.

34. Deny knowledge or information sufficient to form a belief.

35. Deny knowledge or information sufficient to support a belief.

36. Deny knowledge or information sufficient to support a belief.

37. Deny knowledge or information sufficient to support a belief.

38. Deny knowledge or information sufficient to support a belief.

39. Deny knowledge or information sufficient to support a belief.

40. Deny knowledge or information sufficient to support a belief.

41. Deny.

42. Defendants repeat and reiterate its responses to the paragraphs numbered "1" to "41" as if fully set forth herein.

43. Deny.

44. Deny.

45. Deny.

46. Deny.

**FIRST DEFENSE**

47. The statements that plaintiffs assert are defamatory are truthful, in whole or in part, and thus cannot be the basis for a libel claim.

**SECOND DEFENSE**

48. The statements which plaintiffs assert are defamatory are the opinion of defendants, in whole or in part, and thus, cannot be the basis for a libel claim.

**FACTS RELEVANT TO THE COUNTERCLAIMS**

**THE PARTIES**

49. Counterclaim-Plaintiff Eiffel Investment Group and Associates LLC ("Eiffel"), is a Florida limited liability company with an address at 8266 Sawpine Road, Delray Beach, Florida.

50. Eiffel is in the business of real estate sales and development.

51. Upon information and belief, Counterclaim-Defendant Kimberly A. Carpenter ("Carpenter") is an individual residing at 15 Mereland Road, New Rochelle, New York.

52. Upon information and belief, Carpenter is a member of the New York State bar in good standing.

53. Upon information and belief, Counterclaim-Defendant Arthur Ackert Jr. ("Ackert Jr.") is an individual residing at 13 Kimlin Court, Poughkeepsie, New York.

54. Upon information and belief, Counterclaim-Defendant Dennis Lore ("Lore") is an individual residing at 136 Moonlight Drive, Stormville, New York.

55. Upon information and belief, Counterclaim-Defendant Superior Walls of the Hudson Valley, Inc. ("Superior") is a New York corporation with an office at 68 Violet Avenue, Poughkeepsie, New York.

56. Upon information and belief, Counterclaim-Defendant AACK Land Development, LLC ("AACK") is a New York limited liability company with an office at 68 Violet Avenue, Poughkeepsie, New York.

57. Upon information and belief, Counterclaim-Defendant Fairview Block and Supply Corp. ("Fairview") is currently an inactive New York corporation that previously maintained an office at 68 Violet Avenue, Poughkeepsie, New York.

58. Upon information and belief, Counterclaim-Defendant Horizon Real Property Development LLC ("Horizon") is a New York limited liability company with an office at 68 Violet Avenue, Poughkeepsie, New York.

59. Upon information and belief, Counterclaim-Defendants Lore and Ackert Jr. were and continue to be the principals of Horizon, Fairview, AACK and Superior.

60. Upon information and belief, Counterclaim-Defendants Lore and Ackert Jr. used these companies interchangeably to conduct business and in an attempt to insulate themselves from personal liability.

61. Upon information and belief, Lore and Ackert Jr. acted under the guise of Horizon, Fairview, AACK and Superior to further their scheme to defraud the Counterclaim-Plaintiff.

62. This Court has jurisdiction over this matter based on diversity of citizenship and amount in controversy under 28 U.S.C. Section §1332.

## THE CHURCHLAND PROPERTIES

### Contract for Parcel I

63. In or about June 12, 2006, Independence Community Bank as custodian for John R. Addrizzo, MD IRA and for Amaticia Addrizzio, IRA of Staten Island, New York, as sellers, entered into a contract with Counterclaim-Defendant AACK, as purchaser, for the purchase of 100 acres of land in the Town of Saugerties, County of Ulster ("Churchland Contract I").

64. AACK was represented in the transaction by Counterclaim-Defendant Carpenter.

65. Pursuant to the June 12, 2006 contract, the purchase price of Parcel I was $1,200,000. Upon the signing of the June 12, 2006 contract by seller's attorney, $120,000 was to be held in escrow by the law firm of Maynard, O'Connor, Smith & Catalinotto, LLP. Upon information and belief, Counterclaim-Defendant AACK deposited this sum in accordance with the contract.

66. The purchase price of the parcel was to be adjusted if, upon a survey, the acreage was found to be more or less than 100 acres.

67. Pursuant to the June 12, 2006 contract, AACK agreed to pay the seller $29,200 upon the sale of each lot.

68. The Churchland Contract I was conditioned upon purchaser obtaining approval from the Town of Saugerties for a 40-lot subdivision for the 100-acre parcel by December 1, 2006.

69. No such approval was obtained by that date.

70. Upon information and belief, no such approval could ever have been obtained.

71. Purchaser had a period of 90 days from receipt of an executed copy of the contract to perform inspections necessary to determine if an application for at least a 40-lot subdivision was feasible. If it was determined not to be feasible purchaser would have the right to return of all amounts paid under the contract.

72. In the event the purchaser was unable to obtain approval of at least a 40-lot subdivision, purchaser would have the option of declaring the contract null and void and receiving a return of its down payment or proceeding to closing without such approval.

**Contract for Parcel II**

73. On or about June 12, 2006, Independence Community Bank as custodian for John R. Addrizzo, MD IRA and Amaticia Addrizzio, IRA, as sellers, entered into a contract with AACK, as purchaser, in the amount of $612,000 for purchase of a second property in the Town of Saugerties, County of Ulster consisting of plus/minus 51 acres ("Churchland Contract II").

74. AACK was represented in the transaction by Counterclaim-Defendant Carpenter. Churchland Contract II provided that upon signing the contract, $61,200 was to be held in escrow by seller's attorney. Upon information and belief, Counterclaim-Defendant AACK deposited this sum in accordance with the contract.

75. The contract was conditioned upon the purchaser obtaining approval from the Town of Saugerties for a 20-lot subdivision for the parcel for a 100 acre parcel by December 1, 2006.

76. No such approval was obtained by that date.

77. Upon information and belief, no such approval could ever have been obtained.

78. Purchaser had a period of 90 days from receipt of an executed copy of the contract to perform inspections necessary to determine if an application for at least a 20-lot subdivision was feasible. If it was determined not to be feasible purchaser would have the right to return of all amounts paid under the contract.

79. In the event the purchaser was unable to obtain approval of at least a 20-lot subdivision, purchaser would have the option of declaring the contract null and void and receiving a return of its down payment or proceeding to closing without such approval.

**THE CHURCHLAND ASSIGNMENT**

80. In or about July of 2006, Eiffel, a Florida company, decided to look for land to develop in upstate New York.

81. Having little knowledge of the New York real estate market, Mark Pupke, a principal of Eiffel, made arrangements to meet with real estate agent Lore, who had been recommended by a friend.

82. On or about July 21, 2006, Mr. Pupke met with Lore to learn more about particular properties that Lore had under contract.

83. During their meeting, Lore represented to Eiffel that his engineers had inspected both Parcel I and Parcel II (together the "Churchland Properties") and that he could expect to obtain a total of 104 lots on the properties.

84. During the meeting, Lore expressed how lucrative each of the properties were and stated that he and his partners, Counterclaim-Defendant Ackert Jr. and Arthur Ackert Sr. would develop the properties themselves had they not been involved in too many other projects.

85. Lore represented to Eiffel that it could resell each lot for approximately $100,000.

86. Lore also represented that if Eiffel were to develop the property after subdivision approval was obtained, Eiffel could "clear" five million dollars ($5,000,000.00) with the purchase of these lots.

87. In addition, Lore represented that he and his partners had already disbursed $181,200 into the seller's escrow account in accordance with the terms of the Churchland Contracts.

88. Lore told Mr. Pupke that it would take under one year for to receive full approvals from the Town of Saugerties to allow the subdivision of this property.

89. Lore represented to Eiffel that if Eiffel took over the contracts Lore and Ackert Jr. would still remain fully responsible for completing the subdivision approval process.

90. During the course of this meeting, Lore represented to Mr. Pupke that all money paid by Eiffel would be held in escrow by Carpenter pending subdivision approval.

91. During the course of these discussions Lore failed to advise Eiffel that his partner, Ackert, Jr., was Carpenter's sister.

92. On or about August 14, 2006, based on Lore's representations, Eiffel entered into an assignment agreement ("Churchland Assignment"), with AACK, an

entity in which Lore, Ackert Jr. and Ackert Sr. were partners, for the assignment of AACK's interest in the Churchland Contracts.

93. AACK was represented by Carpenter.

94. Lore represented to Eiffel that the transaction would run more smoothly if the parties did not retain counsel.

95. Based on the foregoing, Eiffel did not retain counsel to represent it in the transaction.

96. Pursuant to the terms of the Churchland Assignment, Eiffel was to pay AACK the sum of $300,000 and the $181,200 AACK had already paid in escrow to the seller became the property of Eiffel.

97. Pursuant to the terms of the Churchland Assignment, AACK retained full responsibility for doing all acts necessary to obtain subdivision approval for the Churchland Properties. The Churchland Assignment contemplated that AACK would apply for the subdivision with the town, retain all engineers, surveyors, etc. necessary to pursue the approval, and ultimately obtain final approval from the Town for a 120-lot subdivision.

98. Upon the execution of the assignment Eiffel paid $100,000 in certified funds to Carpenter's escrow account to be disbursed to AACK upon the receipt of a certification letter from the purchaser's attorney certifying the validity of the contract and that the contract is fully assignable with the seller's permission.