preliminary and final approvals for the subdivisions could never be obtained pursuant to the terms of the assignment agreements.

176. Based on the foregoing, Eiffel was entitled to cancel the three assignment agreements and obtain a full refund of its money.

177. In a letter dated April 30, 2007, subsequent to Eiffel's discovery of the total unfeasibility of the subdivision projects, Eiffel notified Lore of its intent to void the Churchland and Lauren Tice Assignments and demanded a full refund of the $250,000.00 it had deposited with Carpenter pursuant to those assignments.

178. To date, the Counterclaim-Defendants have failed and refused to refund any of Eiffel's money.

179. Additionally, they have also thwarted the return of escrow from the original sellers' attorneys, which has belonged to Eiffel since the time the assignments were executed.

### FIRST COUNTERCLAIM AGAINST ALL COUNTERCLAIM-DEFENDANTS

180. Counterclaim-Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "179" as if fully set forth herein.

181. Counterclaim-Defendants made the material misrepresentations and omissions as set forth herein to induce Eiffel to enter into the Churchland Assignment.

26

182. Based upon these material misrepresentations and omissions, Eiffel entered into the Churchland Assignment.

183. Upon information and belief, Counterclaim-Defendants intentionally made these misrepresentations to induce Eiffel to enter into the Churchland Assignment and make subsequent payments thereunder.

184. Upon information and belief, the Counterclaim-Defendants knew that these representations were false at the time they were made to Eiffel.

185. Eiffel reasonably relied upon the material misrepresentations made by the Counterclaim-Defendants when entering into the Churchland Assignment.

186. As a result of fraudulent misrepresentations made by the Counterclaim-Defendants, Eiffel has been damaged in the amount of $100,000 plus $32,596 for the costs associated with the attempt to obtain approvals to develop the property.

## SECOND COUNTERCLAIM AGAINST ALL COUNTERCLAIM-DEFENDANTS

187. Counterclaim-Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "186" as if fully set forth herein.

188. The Counterclaim-Defendants made the material misrepresentations referenced herein to induce Eiffel to enter into the Lauren Tice Assignment.

189. Based upon these material misrepresentations, Eiffel entered into the Lauren Tice Assignment and remitted payment of $100,000 to Carpenter.

190. Based on these material misrepresentations, Eiffel remitted an additional payment of $50,000 to Carpenter as per the Lauren Tice Assignment.

191. Upon information and belief, the Counterclaim-Defendants intentionally made these material misrepresentations to Eiffel to induce it to enter into the Lauren Tice Assignment and make payments thereunder.

192. Upon information and belief, the Counterclaim-Defendants knew that these statements were false at the time they were made to Eiffel.

193. Eiffel reasonably relied upon the material misrepresentations made by the Counterclaim-Defendants when entering into the Lauren Tice Assignment and making payments thereunder.

194. As a result of fraudulent misrepresentations made by the Counterclaim-Defendants, Eiffel has been damaged in the amount in excess of $150,000.00, plus $32,596 for the costs associated with the attempt to obtain approvals to develop the property.

### THIRD COUNTERCLAIM AGAINST ALL COUNTERCLAIM-DEFENDANTS

195. Counterclaim-Plaintiff repeat and reallege each and every allegation contained in paragraphs "1" through "194" as if fully set forth herein.

196. The Counterclaim-Defendants made the material misrepresentations referenced herein to induce Eiffel to enter into the Clermont Assignment.

197. Based upon these material misrepresentations, Eiffel entered into the Clermont Assignment.

198. Upon information and belief, the Counterclaim-Defendants intentionally made these material misrepresentations to Eiffel to induce it to enter the Clermont Assignment and make payments thereunder.

199. Upon information and belief, the Counterclaim-Defendants knew that these statements were false at the time they were made to Eiffel.

200. Eiffel reasonably relied upon the material misrepresentations made by the Counterclaim-Defendants when entering into the Clermont Assignment.

201. As a result of fraudulent misrepresentations made by the Counterclaim Defendants, Eiffel has been damaged in an amount in excess of $100,000.00.

## FOURTH COUNTERCLAIM AGAINST AACK LAND DEVELOPMENT, LLC.

202. Counterclaim-Plaintiff repeat and reallege each and every allegation contained in paragraphs "1" through "201" as if fully set forth herein.

203. AACK breached the terms of the Churchland Assignment by failing to proceed in good faith with the subdivision process pursuant to the terms of the

assignment and refusing to refund Eiffel's $100,000.00 deposit after it received notice of cancellation from Eiffel.

204. In addition to the above, the Assignment provided that: "if the Assignor did not pursue with the entire approval process for the subdivisions, then the Assignee may, declare this Assignment null and void and all payments made here under shall be refunded to the Assignee immediately upon request and the Assignor shall also reimburse the Assignee for any costs incurred as a result, but not necessarily limited to legal fees and court costs and/or judgments".

205. In breach of the Churchland Assignment, AACK failed to proceed diligently and in good faith with the approval process on the Churchland Properties.

206. All legal fees incurred by Eiffel in furtherance of its counterclaim are costs incurred as a result of AACK's breaches and its failure to proceed with the approval process.

207. All expenses incurred by Eiffel in hiring the Engineers are costs incurred as a result of AACK's breaches and its failure to proceed with the approval process.

208. As a result of AACK's breach of the Churchland Assignment, Eiffel has been damaged in an amount in excess of $100,000, plus $32,596 for the costs associated with the attempt to obtain approvals to develop the property, plus the

30

attorneys' fees, costs and expenses Eiffel will incur in furtherance of its counterclaim in an amount to be determined at trial.

## FIFTH COUNTERCLAIM AGAINST AACK LAND DEVELOPMENT, LLC.

209. Counterclaim-Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "208" as if fully set forth herein.

210. The Churchland Assignment required AACK to apply for a 120-lot subdivision and allowed Eiffel to declare the agreement null and void if it did not obtain approvals for 60 lots.

211. The condition of the Churchland Assignment could never have been fulfilled due to the conditions of and restrictions on the property.

212. Eiffel does not have an adequate remedy at law for AACK's breach of the Churchland Assignment.

213. Rescission of the Churchland Assignment will substantially restore the status quo among the parties thereto.

214. As a result of AACK's breach, the Churchland Assignment should be rescinded.

## SIXTH COUNTERCLAIM AGAINST
## FAIRVIEW BLOCK & SUPPLY CORP.

215. Counterclaim-Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "214" as if fully set forth herein.

216. Fairview breached the terms of the Lauren Tice Assignment by failing to proceed with the subdivision process pursuant to the terms of the assignment and refusing to refund Eiffel's $100,000 deposit after it received notice of cancellation from Eiffel.

217. In addition to the above, the Lauren Tice Assignment provided that: "if the Assignor did not pursue with the entire approval process for the subdivisions, then the Assignee may, declare this Assignment null and void and all payments made here under shall be refunded to the Assignee immediately upon request and the Assignor shall also reimburse the Assignee for any costs incurred as a result, but not necessarily limited to legal fees and court costs and/or judgments".

218. In breach of the Lauren Tice Assignment, Fairview failed to proceed diligently and in good faith with the approval process on the Lauren Tice Property.

219. All legal fees incurred by Eiffel in furtherance of its counterclaim are costs incurred as a result of Fairview's breaches and its failure to proceed with the approval process.

220. All expenses incurred by Eiffel in hiring the Engineers are costs incurred as a result of Fairview's breaches and its failure to proceed with the approval process.

221. As a result of Fairview's breach of the Lauren Tice Assignment, Eiffel has been damaged in an amount in excess of $150,000, plus $32,596 for the costs associated with the attempt to obtain approvals to develop the property, plus the attorneys' fees, costs and expenses Eiffel will incur in furtherance of its counterclaim in an amount to be determined at trial.

### SEVENTH COUNTERCLAIM AGAINST FAIRVIEW BLOCK & SUPPLY CORP

222. Counterclaim-Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "221" as if fully set forth herein.

223. The Lauren Tice Assignment required Fairview to apply for a 28-lot subdivision and allowed Eiffel to declare the agreement null and void if it did not obtain approval for 17 lots.

224. The condition of the Lauren Tice Assignment could never have been fulfilled due to the conditions of and restrictions on the property.

225. Eiffel does not have an adequate remedy at law for Fairview's breach of the Lauren Tice Assignment.

226. Rescission of the Lauren Tice Assignment will substantially restore the status quo among the parties thereto.

227. As a result of Fairview's breach, the Lauren Tice Assignment should be rescinded.

## EIGHTH COUNTERCLAIM AGAINST HORIZON REAL PROPERTY DEVELOPMENT, LLC

228. Counterclaim-Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "227" as if fully set forth herein.

229. Horizon breached the terms of the Clermont Assignment by failing to proceed with the subdivision process pursuant to the terms of the assignment and refusing to refund Eiffel's $100,000 deposit after it received notice of cancellation from Eiffel.

230. In addition to the above, the Clermont Assignment provided that: "if the Assignor did not pursue with the entire approval process for the subdivisions, then the Assignee may, declare this Assignment null and void and all payments made hereunder shall be refunded to the Assignee immediately upon request and the Assignor shall also reimburse the Assignee for any costs incurred as a result, but not necessarily limited to legal fees and court costs and/or judgments".

231. In breach of the Clermont Assignment, Horizon failed to proceed diligently and in good faith with the approval process on the Clermont Property.

232. All legal fees incurred by Eiffel in furtherance of its counterclaim are costs incurred as a result of Horizon's breaches and its failure to proceed with the approval process.

233. All expenses incurred by Eiffel in hiring the Engineers are costs incurred as a result of Horizon's breaches and its failure to proceed with the approval process.

234. As a result of Horizon's breach of the Clermont Assignment, Eiffel has been damaged in an amount in excess of $100,000, plus $32,596 for the costs associated with the attempt to obtain approvals to develop the property, plus the attorneys' fees, costs and expenses Eiffel will incur in furtherance of its counterclaim in an amount to be determined at trial.

### NINTH COUNTERCLAIM AGAINST HORIZON REAL PROPERTY DEVELOPMENT, LLC

235. Counterclaim-Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" to "234" as if fully set forth herein.

236. The Clermont Assignment required Horizon to apply for a 42-lot subdivision and allowed Eiffel to declare the agreement null and void if it did not get at least a 30-lot subdivision.