UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
KIMBERLEY A. CARPENTER, ARTHUR ACKERT,
JR., ARTHUR ACKERT, SR., DENNIS LORE and
SUPERIOR WALLS OF THE HUDSON VALLEY,
INC.

                              Plaintiffs,

        -against-

MARIE PUPKE and EIFFEL INVESTMENT GROUP
AND ASSOCIATES, LLC.                                                    AMENDED  ANSWER
                                       TO THIRD-PARTY
                          Defendants.              COMPLAINT AND
-------------------------------------------------------------------------x   THIRD-PARTY
EIFFEL INVESTMENT GROUP AND ASSOCIATES, LLC.,   COUNTERCLAIMS

                 Third-Party Plaintiffs,              Case No.07 cv 5689

        -against-

AACK LAND DEVELOPMENT, LLC., FAIRVIEW BLOCK
AND SUPPLY CORP., and HORIZON REAL PROPERTY
DEVELOPMENT, LLC.,

                 Third-Party Defendants.
-------------------------------------------------------------------------x
AACK LAND DEVELOPMENT, LLC., FAIRVIEW BLOCK
AND SUPPLY CORP., and HORIZON REAL PROPERTY
DEVELOPMENT, LLC.,

              Third-Party Counterclaim Plaintiffs,

        -against-

MARIE PUPKE and EIFFEL INVESTMENT GROUP
AND ASSOCIATES, LLC.

             Third-Party Counterclaim Defendants.
-------------------------------------------------------------------------x

      Third-Party Defendants and Third-Party Counterclaimants AACK LAND DEVELOPMENT, LLC,

FAIRVIEW BLOCK AND SUPPLY CORP., and HORIZON REAL PROPERTY DEVELOPMENT,

LLC, by and through their attorneys, THE LAW OFFICES OF VINCENT E. BAUER, answering the Third-Party Complaint and bringing their Third-Party Counterclaims, state as follows:

1.      Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraphs thereof numbered "1" and "2".

2.      Admit the allegations set forth in the Complaint as contained in paragraphs thereof numbered "3", "4", "5", "6", "7", "8", "10" and "14".

3.      Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "9", "12", and "13".

4.      Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "11", except admit that Dennis Lore is a principal of HORIZON and Arthur Ackert, Jr. is a principal of AACK.

5.      Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "15", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

6.      Admit the allegations set forth in the Complaint as contained in paragraph thereof numbered "16".

7.      Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "17", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court to the true and

correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.  In accordance with paragraph 13 of the addendum to the contract (parcel I), the sum of $12,000 was deposited by AACK into the seller's attorney's escrow account as the down payment on the property.

8.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "18", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court  to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

9.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "19," except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court  to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

10.     Deny each and every allegation set forth in the Complaint as contained in paragraph thereof numbered "20".

11.     Deny each and every allegation set forth in the Complaint as contained in paragraph thereof numbered "21", except admit that no approval was obtained for a 40 lot subdivision by December 1, 2006.

12.    Deny the allegations set forth in the Complaint as contained in paragraph thereof numbered "22", except admit that no approval of the 40-lot subdivision was obtained by December 1, 2006.

13.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "23", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court  to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

14.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "24", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court  to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

15.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "25", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

16.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "26", except: admit that AACK was represented in the transaction

4

by Carpenter; admit that an agreement was entered into between Independent Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York an AACK, and refer the Court to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement; and admit that, in accordance with paragraph 13 of the addendum to the contract (parcel II), the sum of $6,120 was deposited into the seller's attorney's escrow account by AACK as the down payment on the property.

17.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "27", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

18.    Deny each and every allegation set forth in the Complaint as contained in paragraph thereof numbered "28", except admit that no approval was obtained for a 40 lot subdivision by December 1, 2006.

19.    Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "29".

20.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "30", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court to the true and

correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

21.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "31", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.

22.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraphs thereof numbered "32" and "34".

23.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "33", as to Mark Pupke and EIFFEL's knowledge of the New York real estate market, but admit that Pupke and Lore met, and deny that Lore was/is a real estate agent.

24.     Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "35", "36", "37", "38", "40", "43", "46", "47" and "51".

25.     Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "39", except admit that an agreement was entered into between Independence Community Bank as Custodian for John R. Addrizzo, MD, IRA for Amaticia Addrizzo, IRA of Staten Island, New York and AACK, and refer the Court to the true and correct terms of the contract, including the addendum and rider simultaneously executed by the parties to the agreement.  In accordance with paragraph  13 of the addendum to the contract

6

(parcel I and parcel II), the sum of $12,000 and $6,120.00 was deposited by AACK into the seller's attorney's escrow account as the down payment on the properties.

26.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "41".

27.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "42".

28.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "44", except admit that an agreement was entered into between AACK and EIFFEL, and refers the Court to the true and correct terms of the agreement.

29.     Admit the allegations set forth in the Complaint as contained in paragraph thereof numbered "45".

30.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "48", except admit that an agreement was entered into between AACK and EIFFEL, and refer the Court to the true and correct terms of the agreement.

31.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "49", except admit that an agreement was entered into between AACK and EIFFEL, and refer the Court to the true and correct terms of the agreement.

32.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "50", except admit that an agreement was entered into between AACK and EIFFEL, and refer the Court to the true and correct terms of the agreement.

33.     Admit the allegations set forth in the Complaint as contained in paragraph thereof numbered "52".

34.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "53", except admit that an agreement was entered into between AACK and EIFFEL, and refer the Court to the true and correct terms of the agreement.

35.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "54", except admit that an agreement was entered into between AACK and EIFFEL, and refer the Court to the true and correct terms of the agreement.

36.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "55", except admit that an agreement was entered into between Norman Hesse and FAIRVIEW, and refer the Court to the true and correct terms of the agreement and addendum entered into by the parties.

37.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "56", except admit that an agreement was entered into between Norman Hesse and FAIRVIEW, and refer the Court to the true and correct terms of the agreement and addendum entered into by the parties.

38.     Admit the allegations set forth in the Complaint as contained in paragraph thereof numbered "57".

39.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "58", except admit that an agreement was entered into between Norman Hesse and FAIRVIEW, and refer the Court  to the true and correct terms of the agreement and addendum entered into by the parties.

40.     Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "59", "61", "62", "64" and "71".

41.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "60".

42.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "63", except admit that CARPENTER forwarded two letters to EIFFEL, and refer the Court to the true and correct terms of the letters.

43.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "65", except admit that FAIRVIEW and EIFFEL entered into an agreement, and refer to the Court for the true and correct terms of the agreement.

44.     Admit the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "66".

45.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "67", except admit that FAIRVIEW and EIFFEL entered into an agreement, and refer the Court to the true and correct terms of the agreement.

46.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "68", except admit that FAIRVIEW and EIFFEL entered into an agreement, and refer the Court to the true and correct terms of the agreement.

47.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "69", except admit that FAIRVIEW and EIFFEL entered into an agreement, and refer the Court to the true and correct terms of the agreement.

48.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "70", except admit that FAIRVIEW and EIFFEL entered into an agreement, and refer the Court to the true and correct terms of the agreement.

49.     Admit the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "72".

50.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "73", except admit that FAIRVIEW and EIFFEL entered into an agreement, and refer the Court to the true and correct terms of the agreement.

51.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "74", except admit that FAIRVIEW and EIFFEL entered into an agreement, and refer the Court to the true and correct terms of the agreement.

52.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in the paragraph thereof  numbered "75".

53.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "76", except admit that an agreement was entered into by Alicia Tuck Collins, and HORIZON REAL PROPERTY DEVELOPMENT, LLC., and refer the Court to the true and correct terms of the agreement, rider and addendum entered into by the parties.

54.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "77", except admit that an agreement was entered into by Alicia Tuck Collins, and HORIZON REAL PROPERTY DEVELOPMENT, LLC., and refer the Court to the true and correct terms of the agreement, rider and addendum entered into by the parties.

55.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "78", except admit that an agreement was entered into by Alicia

Tuck Collins, and HORIZON REAL PROPERTY DEVELOPMENT, LLC., and refer the Court to the true and correct terms of the agreement, rider and addendum entered into by the parties.

56.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "79", except admit that an agreement was entered into by Alicia Tuck Collins, and HORIZON REAL PROPERTY DEVELOPMENT, LLC., and refer the Court to the true and correct terms of the agreement, rider and addendum entered into by the parties. In accordance with the terms of the contract, a down payment of $82,500 was held in seller's attorney's escrow account.

57.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "80", except admit that an agreement was entered into by Alicia Tuck Collins, and HORIZON REAL PROPERTY DEVELOPMENT, LLC., and refer the Court as to the true and correct terms of the agreement, rider and addendum entered into by the parties.

58.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "81".

59.     Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "82" and "87".

60.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "83", except admit that EIFFEL was provided two maps in reference to the subject property.

61.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in the paragraph thereof numbered "96".

62.     Admit the allegations set forth in the Complaint as contained in the paragraphs thereof numbered "84" and "88".

63.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in the paragraph thereof numbered "85", except admit that HORIZON entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

64.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "86", except admit that HORIZON entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

65.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "89".

66.     Admit the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "90".

67.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "91".

68.     Admit the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "92".

69.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "93", except admit that HORIZON entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

70.     Deny each and every allegation set forth in the Complaint as contained in the paragraph numbered "94", except admit that HORIZON entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

71.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "95", except admit that HORIZON entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

72.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "97", except admit that FAIRVIEW, AACK and HORIZON entered into agreements with EIFFEL, and refer the Court to the true and correct terms of the agreements.

73.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "98", but admit that FAIRVIEW, AACK and HORIZON entered into agreements with EIFFEL, and refer the Court to the true and correct terms of the agreements.

74.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "99", except admit that FAIRVIEW, AACK and HORIZON entered into agreements with EIFFEL, and refer the Court to the true and correct terms of the agreements.

75.     Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "100", "101", "102", "104", "109", "111",  "113", "114", "115", "126" and "128".

76.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "103".

77.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraphs thereof numbered "119" and "122".

78.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "120".

79.     Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in paragraph thereof numbered "121".

80.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "105", except admit that Arthur Ackert Jr. sent a letter dated November 27, 2006 and refer to the Court for the true and correct meaning of the letter.

81.     Admit the allegations set forth in the Complaint as contained in paragraph thereof numbered "108".

82.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "118", except deny knowledge and information sufficient to form a belief as to EIFFEL's frustration and the hiring of its own engineers.

83.     Admit the allegations set forth in the Complaint as contained in the paragraphs thereof numbered "106", "107"and "116".

84.     Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "110", except admit that Eiffel requested written receipts of the sketch approvals for the referenced properties.

85.     Admit knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the Complaint as contained in the paragraph thereof numbered "112", and refer the Court to the true and correct terms of the letter.

86.     Deny the allegations set forth in the Complaint as contained in the paragraph thereof numbered "117".

87.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "123".

88.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "124".

89.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "125".

90.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "127".

91.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "129", except admit that EIFFEL sent a letter dated April 30, 2007, which purported to void the Churchland and Lauren Tice assignments, and refer the Court to the true and correct contents of the letter.

92.    Deny the allegations set forth in the Complaint as contained in the paragraph thereof numbered "130".

93.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "131".

94.    Repeat and reallege their responses to paragraphs numbered "1" through "131", of the Complaint.

95.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "133", "134", "135", "136", "137"and "138".

96.    Repeat their responses to the paragraphs numbered "1" through "138" of the Complaint.

97.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "140", "141", "142", "143", "144", "145" and "146".

98.    Repeat their responses to the paragraphs numbered "1" through "146" of the Complaint.

99.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "148", "149", "150", "151", "152" and "153".

100.    Repeat their responses to the paragraphs numbered "1" through "153" of the Complaint.

101.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "155", except admit that AACK entered into an assignment with EIFFEL, and refer the Court to the true and correct terms of the agreement.

102.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "156", except admit that AACK entered into an assignment with EIFFEL, and refer the Court to the true and correct terms of the agreement.

103.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "157", except admit that AACK entered into an assignment with EIFFEL, and refer the Court to the true and correct terms of the agreement.

104.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "158", "159" and "160".

105.    Repeat their responses to paragraphs numbered "1" through "160", of the Complaint.

106.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "162", except admit that AACK entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

107.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "163", except admit that AACK entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

108.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "164", "165" and "166".

109.    Repeat their responses to paragraphs numbered "1" through "166", of the Complaint.

110.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "168", except admit that FAIRVIEW entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

112.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "169", except admit that FAIRVIEW entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

113.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "170", except admit that FAIRVIEW entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

114.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "171", "172" and "173".

115.    Repeat their responses to paragraphs numbered "1" through "173", of the Complaint.

116.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "175", except admit that FAIRVIEW entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

117.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "176", "177", "178"and "179".

118     Repeat their responses to paragraphs numbered "1" through "179", of the Complaint.

119.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "181".

120.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "182", except admit that HORIZON entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

121.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "183", "184", "185" and "186".

122.    Repeat their responses to the paragraphs numbered "1" through "186" of the Complaint.

123.    Deny each and every allegation set forth in the Complaint as contained in the paragraph thereof numbered "188", except admit that HORIZON entered into an agreement with EIFFEL, and refer the Court to the true and correct terms of the agreement.

124.    Deny each and every allegation set forth in the Complaint as contained in the paragraphs thereof numbered "189", "190", "191" and "192".

125.    State that the paragraph numbered "193".contains a request for relief to which no response is required.

<u>AFFIRMATIVE DEFENSES TO THE THIRD PARTY COMPLAINT</u>

1.    Defendant/third-party plaintiff breached the terms and conditions of the assignments, and therefore all monies paid pursuant to the assignments are treated as liquidated damages.

2.    Defendant/third-party plaintiff failed to cancel the assignments in accordance with the requirements set forth therein.

3.    Defendant/third-party plaintiff's purported cancellations of the assignments cancels all rights to any down payments on the subject properties held in the original seller's attorney's escrow accounts.

4.    There is no privity of contract between defendant/third-party plaintiff and SUPERIOR WALLS OF THE HUDSON VALLEY.

5.    Each of Defendant/Third-Party Plaintiff's counterclaims fails to assert a cause of action.

6.    Defendant/Third-Party Plaintiff's claims are barred by the statute of frauds.

FACTS RELEVANT TO THIRD PARTY DEFENDANTS'
<u>COUNTERCLAIMS AGAINST THIRD - PARTY PLAINTIFF</u>

1.    At all times hereinafter mentioned, FAIRVIEW BLOCK AND SUPPLY (FAIRVIEW) was and remains a New York Corporation with a principal place of business located at 68 Violet Avenue, Poughkeepsie, New York.

2.      At all times hereinafter mentioned, AACK LAND DEVELOPMENT, LLC (AACK) was and is a New York limited liability corporation, with offices at 68 Violet Avenue, Poughkeepsie, New York.

3.      At all times hereinafter mentioned, HORIZON REAL PROPERTY DEVELOPMENT, LLC. (HORIZON) was and is a New York limited liability corporation with offices at 68 Violet Avenue, Poughkeepsie, New York.

4.      Upon information and belief, EIFFEL INVESTMENT GROUP AND ASSOCIATES, LLC. is a limited liability company with its principal place of business at 8266 Sawpine Road, Delroy Beach, Florida.

<u>LAUREN TICE PROPERTY</u>

5.      On or about January 13, 2006, FAIRVIEW, as purchaser, and Norman Hesse, as seller, entered into a contact of sale for the purchase of land located on Lauren Tice Road, Saugerties, New York.  The purchase price was $450,000.

6.      The sum of $25,000 was paid by FAIRVIEW as the down payment on the Lauren Tice contract.  Said funds were and are held in escrow by George Redder, Esq., Norman Hesse's prior counsel.

7.      The balance of $425,000 was to be paid at closing, which, under the contract of sale, was conditioned upon the final subdivision approval from the Town Planning Board of 17 lots.

8.      On September 27, 2006, FAIRVIEW, as assignor, and EIFFEL, as assignee, entered into an assignment of contract with respect to the Lauren Tice Property for $150,000.

9.      In accordance with the terms and conditions of the assignment, upon receipt of certain documentation and information by EIFFEL, EIFFEL was to deposit $50,000 into

KIMBERLEY A. CARPENTER, ESQ.'s escrow account to be disbursed immediately to HORIZON.

10.    Once the aforementioned documentation was received, EIFFEL wired $50,000 to KIMBERLEY A. CARPENTER, ESQ.'s escrow account, which was then disbursed to FAIRVIEW.

11.    The next payment of $50,000 under the assignment was due upon receipt by EIFFEL of sketch approval by the Planning Board of the Town of Saugerties. Said funds were to be deposited into KIMBERLEY A. CARPENTER, ESQ.'s escrow account within 30 days following receipt of sketch approval to then be disbursed to FAIRVIEW BLOCK AND SUPPLY.

12.    On November 21, 2006, at the Town Planning Board meeting, sketch approval for the Lauren Tice Property was obtained.

13.    The granting of sketch approval was thereafter posted on the Town Planning Board of Saugerties' website.

14.    On November 27, 2006, Arthur Ackert, Jr., on behalf of FAIRVIEW BLOCK AND SUPPLY, advised EIFFEL that sketch approval had been obtained and requested that the $50,000 be sent to it, in accordance with the terms of the assignment.

15.    EIFFEL failed to make this payment in a timely manner.

16.    In a March 2007, a letter from William Green of the Town Board was forwarded to EIFFEL by FAIRVIEW evidencing that sketch approval had been obtained.

17.    On February 2, 2007, EIFFEL wired $50,000 into KIMBERLEY A. CARPENTER, ESQ.'s escrow account and in accordance with the terms of the assignment. Said sums were thereafter disbursed to FAIRVEIW on February 26, 2007.

18.    In accordance with the assignment, FAIRVIEW agreed to apply for an approximate 28 lot subdivision.

19.    In accordance with the assignment, the remaining payment was to be disbursed upon preliminary approval of a minimum of 17 fully approved lots.

20.    In accordance with the assignment, EIFFEL agreed to pay an additional $8,000 for each lot above the 17 lots.

21.    In accordance with the assignment, EIFFEL agreed to pay, in addition to the sums stated in the assignment, an additional $8,000 per lot for each lot over 17 lots in which preliminary approval was obtained.

22.    In accordance with the assignment, "In the event assignee [EIFFEL] breaches this contract in any way…or violates any of the terms and conditions of the underlying contracts, addendums and riders, the assignor may at its option declare the assignment null and void and all payments made hereunder shall be considered liquidated damages".

23.    On or about April 30, 2007, EIFFEL faxed a letter to Lore and Ackert Jr. advising that EIFFEL was "no longer interested in the project", demanding the return of the money paid under the assignment.

24.    In addition, EIFFEL canceled the underlying contract with the original seller, Norman Hesse, demanding a release of the $25,000 held in escrow.

25.    From September 27, 2006 through April 30, 2007, FAIRVIEW remained in full compliance with all terms and conditions under the assignment, despite EIFFEL's continued efforts to hinder the process.

26.    The Town Planning Board of Saugerties has never issued a denial for final approval of a minimum of 17 lots.

27.     EIFFEL's cancellation of the assignment and underlying contract violated the terms of the assignment resulting in treatment of all monies paid as liquidated damages.

28.     EIFFEL's cancellation of the assignment, without basis, cancels any and all rights EIFFEL claims to purportedly have with respect to the down payments on the original contract.

<u>CLERMONT PROPERTY</u>

29.     On or about May 25, 2006, HORIZON, as purchaser, and Alicia Turk Collins, as seller, entered into a contract of sale for the purchase of land located in the Town of Clermont, New York (CLERMONT) for the purchase price of $1,650,000.  An addendum and rider were executed simultaneously therewith.

30.     The sum of $82,500 was paid by HORIZON as a down payment on the CLERMONT property.  Said funds are held in the escrow account of Richard Koweck, Esq., counsel for Ms. Collins.

31.     The closing on the Clermont property, in accordance with the contract, executed addendum and rider, was to occur within thirty days following the date that subdivision is acceptable for filing for a minimum of 30 lots.

32.     Under the terms of the contract, HORIZON was obligated to proceed with the subdivision application.

33.     Under the terms of the contract, if more than 42 lots were accepted for subdivision approval, seller/Collins agreed to pay an additional $37,500 for each lot over 42 lots, with a decrease in purchase price to no less than $1.2 million if below 42 lots.

34.     On or about September 27, 2006, HORIZON, as assignor, and EIFFEL, as assignee, entered into an assignment of the Clermont contract for $300,000.

35.    In accordance with the terms and conditions of the assignment, upon receipt of certain documentation and information by EIFFEL, EIFFEL was to deposit $150,000 into KIMBERLEY A. CARPENTER, ESQ.'s escrow account to be disbursed immediately to HORIZON.

36.    Once the aforementioned documentation and information was received, EIFFEL wired $150,000 into KIMBERLEY A. CARPENTER, ESQ.'s escrow account, which was then disbursed to HORIZON.

37.    The remaining funds due under the assignment were to be paid out upon receipt of sketch approval and preliminary approval.

38.    Under the terms of the assignment, HORIZON agreed to apply for a minimum 42 lot subdivision.  If more than 30 lots were approved for preliminary approval, EIFFEL agreed to pay an additional $4,000 for each lot over 30 lots.

39.    In accordance with the assignment, if HORIZON was "unable to obtain final approval for at least a 30 lot subdivision…then the assignee [EIFFEL]…[could] declare the assignment null and void and receive the return of all their monies immediately upon request".

40.    In accordance with the assignment, "In the event assignee [EIFFEL] breaches this contract in any way…or violates any of the terms and conditions of the underlying contracts, addendums and riders, the assignor may at its option declare the assignment null and void and all payments made hereunder shall be considered liquidated damages".

41.    HORIZON proceeded in good faith with the subdivision approval process, however, these efforts were hindered by EIFFEL upon its insistence in hiring certain engineers against the recommendations of HORIZON, to proceed with the subdivision approval process.

42.     The engineers, hired by EIFFEL, failed to proceed in a diligent and expeditious manner, despite HORIZON's continual insistence.

43.     The delays in the approval process were caused solely by the actions of EIFFEL, in direct violation of the terms and conditions of the underlying contract and the subject assignment.

44.     Despite these delays, the underlying contract remained in full force and effect and in good standing as confirmed by Richard Koweck, Esq., counsel for the seller, Collins, and as confirmed by Collins directly.

45.     In July 2007, EIFFEL attempted to cancel the assignment, demanding a return of all monies paid under the assignment.

46.     From September 27, 2006 through July 2007, HORIZON remained in full compliance with all terms and conditions under the assignment.

47.     The Town Planning Board of Clermont has never issued a denial for final approval of a minimum of 30 lots.

48.     EIFFEL's cancellation of the assignment without basis violated the terms of the assignment, resulting in the treatment of all monies paid as liquidated damages.

49.     EIFFEL's cancellation of the assignment cancels any purported right to the down payment held on the original contract.

## CHURCHLAND PROPERTY

50.     On or about June 12, 2006, AACK LAND DEVELOPMENT, LLC (AACK), as purchaser, and Addrizzo, as seller, entered into two contracts of sale (Parcel I and Parcel II) for land located on Churchland Road, Saugerties, New York.  Addenda and riders were executed simultaneously with the contracts.

51.     The contract, including addenda and riders for Parcel I, provided for a purchase price of $1,200,000, with a down payment of $12,000 as set forth in paragraph 13 of the addendum, held in seller's counsel's escrow account.

52.     The contract, including addenda and riders for Parcel II, provide for a purchase price of $612,000 with a down payment of $6,120 as set forth in paragraph 13 of the addendum, held in seller's counsel's escrow account.

53.     Under each contact, AACK was obligated to proceed with various levels of the subdivision approval process.

54.     Under the terms and conditions of the addendum to the contracts for Parcel I and II, the closing on a minimum of 40 approved lots and 20 approved lots, respectively must occur by September 30, 2009, in accordance with paragraph 14 of the addenda.

55.     The addenda to the contracts for Parcel I and II, provide at paragraph 16, that paragraph 6 of the contract setting forth a December 1, 2006 closing date, was eliminated.

56.     On September 27, 2006, AACK, as assignor, and EIFFEL, as assignee, entered into an assignment of contract with respect to Parcel I and II of the Churchland property for $300,000.

57.     In accordance with the terms and conditions of the assignment, upon receipt of certain documentation and information by EIFFEL, EIFFEL was to deposit $100,000 into KIMBERLEY A. CARPENTER, ESQ.'s escrow account to be disbursed immediately to AACK.

58.     Once the aforementioned documentation and information was received, EIFFEL wired $100,000 into KIMBERELY A. CARPENTER, ESQ.'s escrow account, which was then disbursed to AACK.

59.    The remaining funds due under the assignment were to be paid out upon receipt of sketch approval and preliminary approval.

60.    AACK agreed to apply for an approximately 120 lot subdivision.

61.    Under the terms of the assignment, if 100 lots or more are fully approved, EIFFEL agrees to "pay assignor an additional $100,000 payable upon final approval and $2,000 in addition per lot on the sale and closing of 50 lots by assignee."

62.    Under the terms of the assignment, "In the event the assignor is unable to obtain the final approval of at least a 60 lot subdivision…then the assignee at its option may declare this assignment void and null and receive a return of all their monies immediately upon request."

63.    In accordance with the assignment, "In the event assignee [EIFFEL] breaches this contract in any way…or violates any of the terms and conditions of the underlying contracts, addendums and riders, the assignor may at its option declare the assignment null and void and all payments made hereunder shall be considered liquidated damages".

64.    On or about April 30, 2007, EIFFEL faxed a letter to AACK advising that EIFFEL was "no longer interested in the project", demanding the return of the money paid under the assignment.

65.    From September 27, 2006 through April 2007, AACK remained in full compliance with all terms and conditions under the assignment despite EIFFEL's continual efforts to hinder the process.

66.    The Town Planning Board of Saugerties has never issued a denial for final approval for a minimum of 60 lots.

67.    EIFFEL's cancellation of the assignment and underlying contract violated the terms of the assignment resulting in treatment of all monies paid as liquidated damages.

68.     EIFFEL's cancellation of the assignment cancels all purported claims to the down payments on the underlying contract.

FIRST COUNTERCLAIM AGAINST THIRD-PARTY PLAINTIFF
EIFFEL INVESTMENT

69.     Third-party Counterclaimants repeat and reallege each and every allegation to the paragraphs numbered "1" through "68, of the Counterclaim as if set forth herein.

70.     EIFFEL's purported cancellation of the Lauren Tice assignment with FAIRVIEW constituted a breach of the terms and conditions of the assignment.

71.     As a result of EIFFEL's breach of the assignment, FAIRVIEW is entitled to retain all monies paid under the assignment. As a further result of EIFFEL's breach of the assignment, any rights EIFFEL claims to have with respect to the down payments is cancelled.

72.     EIFFEL'S cancellation of the underlying Lauren Tice agreement constitutes an additional breach of the assignment, resulting in lost profits to FAIRVIEW.

73.     As a result of EIFFEL's breach of the assignment, FAIRVIEW has been damaged an amount to be determined at trial.

SECOND COUNTERCLAIM AGAINST THIRD-PARTY PLAINTIFF
EIFFEL INVESTMENT

74.     Third - Party Counterclaimants repeat the allegations contained in paragraphs numbered "1" through "73" of the Counterclaim.

75.    EIFFEL's purported cancellation of the Churchland assignment with AACK constituted a breach of the terms and conditions of the assignment.

76.    As a result of EIFFEL's breach of the assignment, AACK is entitled to retain all monies paid under the assignment.

77.    As a result of EIFFEL's breach of the assignment, any rights EIFFEL claims to have with respect to the down payments is cancelled.

78.    As an additional result of EIFFEL's breach of the assignment, AACK has lost an opportunity to earn profits, and has therefore been damaged, in the amount of

$ 200,000.

THIRD COUNTERCLAIM AGAINST THIRD-PARTY PLAINTIFF<br>EIFFEL INVESTMENT

79.    Third - Party Counterclaimants repeat and reallege each and every allegation contained in the paragraphs numbered "1" through "78" of the Counterclaim.

80.    EIFFEL's purported cancellation of the Clermont assignment with HORIZON constituted a breach of the terms and conditions of the assignment.

81.    As a result of EIFFEL's breach of the assignment, HORIZON is entitled to retain all monies paid under the assignment.

82.    As a result of EIFFEL's breach of the assignment, any rights EIFFEL claims to have with respect to the down payments is cancelled.

83.    As an additional result of EIFFEL's breach of the assignment, HORIZON has lost an opportunity to earn profits, and therefore has been damaged, in the amount of $ 48,000.

FOURTH COUNTERCLAIM AGAINST
THIRD-PARTY PLAINTIFF EIFFEL INVESTMENT

84.    Third-party Counterclaimants repeat and reallege each and every allegation to the paragraphs numbered "1" through "83" of the Counterclaim as if set forth herein.

85.    On or about January 13, 2006 Fairview, as purchaser, and Norman Hesse, as seller, entered into a contract of sale for the purchase of property located on Lauren Tice Road, Saugerties, New York.

86.    The closing of the property was conditioned upon the final subdivision approval from the Town of Saugerties Planning board. There were no time parameters in the contract for the obtaining of subdivision approval.

87.    On September 27, 2006, Fairview, as assignor, and Eiffel as assignee, entered in to an assignment of contract with respect to the Lauren Tice property.

88.    Eiffel was provided with a copy of the contract entered into between Fairview and Hesse, thereby having knowledge of the contract between Fairview and Eiffel.

89.    On or about May 1, 2007, Eiffel contacted the seller directly and cancelled the contract with respect to the Lauren Tice Road property, without justification.

90.    Eiffel's intentional interference with the contract between Fairview and Hesse resulted in damages to Fairview in the amount of $1,800,000.

WHEREFORE, Third-Party Defendants and Third-Party Counterclaimants demand judgment dismissing the third-party complaint in its entirety; and on the Third Party Counterclaims:

1. For the FIRST COUNTERCLAIM, a judgment against EIFFEL enforcing the cancellation of the Lauren Tice assignment on April 30, 2007 with

FAIRVIEW, together with damages in an amount to be determined at trial, plus attorney's fees.

2.  For the SECOND COUNTERCLAIM, a judgment against EIFFEL for the cancellation of the Churchland assignment on April 30, 2007 with AACK, in the amount of $200,000, plus attorney's fees.

3.  For the THIRD COUNTERCLAIM, a judgment against EIFFEL for the cancellation of the Clermont assignment in July 2007 with HORIZON, in the amount of $48,000, plus attorney's fees.

4.  For the FOURTH COUNTERCLAIM, a judgment against EIFFEL in the amount of $1,800,000, plus attorney's fees.


Dated:  New York, New York
        September 21, 2007



                        LAW OFFICES OF VINCENT E. BAUER

                    BY:_____
                        VINCENT E. BAUER
                        Attorneys for Plaintiff/Third-Party Defendants
                        Third-Party Counterclaimants
                        475 Park Avenue South, 25th Floor
                        New York, New York 10016
                        (212) 575-1517